IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

POTOMAC CONSTRUCTION COMPANY,    )
INC.,    )
       **Plaintiff,**    )
   )
       v.    )      **Civil Case No.: GLS-21-193**
   )
WASHINGTON METROPOLITAN AREA    )
TRANSIT AUTHORITY,    )
   )
       **Defendant.**    )
_____)

## MEMORANDUM OPINION

Potomac Construction Company, Inc. ("Potomac" or "Plaintiff") has brought a declaratory judgment and injunctive relief action against the Washington Metropolitan Area Transit Authority ("Defendant," "WMATA," or "the Authority"). Plaintiff claims that Defendant violated the law and its own procurement regulations by failing to award it a contract to repave Metro station surface parking lots.

Pending before the Court is a "Motion to Dismiss the Complaint" (ECF No. 17) ("Motion to Dismiss") filed by Defendant. Plaintiff has filed an opposition to the Motion to Dismiss, and Defendant replied. (ECF Nos. 22-23).

As a preliminary matter, this Court finds that even though a preliminary injunction motion has been filed, no hearing is necessary given the procedural posture of this case; namely, a fully-briefed motion to dismiss that raises subject matter jurisdiction issues under Federal Rule of Civil Procedure 12(b)(1), and not factual issues that necessitate a hearing.[1] *See Fundamental Admin.*

---

[1] As set forth more dully below in Sections B to E, because the Court finds that dismissal is required on the jurisdictional issue, it need not address the factual issues related to WMATA's argument that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Servs., LLC v. Anderson*, Civ. No. JKB 13-1708, 2015 WL 2340831, at \*1 (D. Md. May 13, 2015) (declining to hold hearing where "the parties' written submissions do not raise a question of fact that must be resolved before the Court may rule on Plaintiff's motion"); *see also* 11A Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2949 (3d ed. 2019) ("[P]reliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless."). Thus, the issues raised by the Motion to Dismiss have been fully briefed and no hearing is necessary. *See* Local Rule (L.R.) 105.6 (D. Md. 2018). For the reasons set forth more fully herein, the Court will grant Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

## I.    FACTUAL BACKGROUND[2]

Potomac, a Minority-Owned small business, is a Virginia limited liability company. Plaintiff has a Class A General Contractor license, and allegedly has performed construction contracts for WMATA for over twenty years. (ECF No. 1, ¶ 12). WMATA "is an interstate instrumentality of Maryland, the District of Columbia, and the Commonwealth of Virginia, created by the WMATA Compact." (*Id.*, ¶ 13). WMATA operates the Metrorail and Metrobus system that transports passengers in and between the District of Columbia, Maryland, and Virginia. (*Id.*).

On July 17, 2020, WMATA made public an invitation for bid ("IFB") for a project ("Repaving Contract") to resurface parking garages at five Metro facilities. All bids were ultimately due by September 2, 2020, by no later than 2:00 p.m. local time. (*Id.*, ¶¶ 19, 22).

---

[2] Unless otherwise noted, the facts are taken from the "Verified Complaint for Declaratory and Injunctive Relief," ECF No. 1, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes Plaintiff's version of facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The IFB called for the submission of bids in electronic format; initially, via email to a certain address ("PRMTPolicy@wmata.com") and a later amendment to the IFB instructed bids to be uploaded to a WMATA webpage ("supplier.wmata.com"), "but continued to reference 'email' as an acceptable means of electronic bid submission." (*Id.*, ¶¶ 22-23, 27-29). The IFB further required bids to be addressed to the Contract Administrator, with a copy emailed to "PRMTPolicy@wmata.com" and also uploaded to the web server, "supplier.wmata.com." The amended IFB referenced electronic bid submissions to "supplier.wmata.com," but also "continued to reference email as an acceptable means for submitting electronic bids," including a scenario where a bidder wanted to change an offer already submitted. (*Id.*, ¶¶ 24-28).

The amended IFB also specified that bid files were not to be in excess of 20 MB when emailed, and that files larger than this size would be rejected by the web server. Any file larger than 20 MB had to be reduced and submitted via multiple separate emails. In addition, "the body of the email for bids shall show the hour and date specified in the solicitation for bid opening, the solicitation number, and the bidder's name and address." Moreover, the amended IFB stated "bids shall be timely emailed to reach WMATA (sic) designated Web Server before 1400 (local time) on day of Bid opening." (*Id.*, ¶¶ 29, 30).

Potomac was one of three vendors that submitted bids. Potomac timely submitted "a responsive, acceptable, electronic bid to WMATA via email," specifically "via electronic transmission to: "PRMTPolicy@wmata.com" on September 2, 2020, at 1:49 P.M. EST." WMATA received Potomac's bid electronically via "PRMTPolicy@wmata.com," i.e., Potomac did not receive an "error or return/kick back message" contradicting WMATA's receipt. Thus, WMATA was "in control of Potomac's bid submission in advance of the bid submission deadline." (*Id.*, ¶¶ 31-35,41).

Six days after Potomac submitted its bid, WMATA notified Potomac that it did not consider Plaintiff's submission because the bid was not submitted to the "supplier.wmata.com" Web Server address. (*Id.*, ¶¶ 36, 38).  On September 9, 2020, consistent with WMATA's Procurement Procedures Manual ("PPM"), Potomac submitted a bid protest to the Contracting Officer, challenging its decision to exclude Potomac from the resurface project competition.  On October 28, 2020, WMATA acknowledged timely receipt of the original bid, and responded to the bid protest, denying it.  Specifically, even though WMATA timely received Plaintiff's bid via "PRMTPolicy@wmata.com," the Contracting Officer rejected the submission, ("the denial letter"), deeming it materially non-responsive because it was not uploaded to "supplier.wmata.com." (*Id.*, ¶¶ 36, 41-43).  On October 29, 2020, Potomac filed a request for reconsideration, which was denied on November 24, 2020.  When denying reconsideration, WMATA notified Potomac of its right to appeal to the Federal Transportation Authority ("FTA"). (*Id.*, ¶¶ 51-53).

On December 4, 2020, Potomac noted an appeal to the FTA, also providing a copy of the same to the Contracting Officer.  As part of its appeal, Potomac asserted that the Contracting Officer failed to follow the bid protest procedures outlined in the PPM.  Roughly three days later, WMATA violated the PPM by awarding the Repaving Contract to another vendor, in the amount of $5,790,189.35.  WMATA issued the Repaving Contract to another vendor, despite the fact that Potomac's bid was the lowest.  (*Id.*, ¶¶ 57-58).  The award was contrary to the requirements in the PPM that any contract award should not proceed if a bid protest were lodged with the FTA.  (*Id.*, ¶¶ 53-55).  This appeal is likely still pending.  (*See* ECF Nos. 17-1, 22).

## II.   PROCEDURAL BACKGROUND

On January 22, 2021, Potomac filed its "Verified Complaint for Declaratory and Injunctive Relief" challenging WMATA's bid selection process related to a contract to repave five Metro parking lots.  ("Verified Complaint," ECF No. 1).  Potomac first maintains that WMATA acted arbitrarily, capriciously, and without any rational basis when it excluded Potomac from the bid competition for the Repaving Contract.  Second, Potomac contends that it materially complied with all IFB requirements for its bid submission, and that its "minor irregularity" in its bid submission was immaterial, and that WMATA violated procurement regulations by denying Potomac the opportunity to cure its error, or by not waiving the bid submission requirement.  Relatedly, WMATA treated Potomac disparately when it afforded the winning vendor an opportunity to "correct an actual material error [in its submission] two days after bid opening."  Third, Potomac asserts that WMATA violated its own procurement regulations when it denied Potomac's agency-level bid protest.  Fourth, by awarding the Repaving Contract to another vendor, Potomac argues that WMATA violated requirements outlined in the PPM, namely that the contract was only to be awarded to the "lowest priced responsive, responsible bidder."  (Verified Complaint, ¶¶ 22-30, 33, 36, 38, 54-58, 80, 86, 102).

In its two-count Verified Complaint—Count I - Declaratory Judgment, Count II - Permanent Injunction—Plaintiff seeks an order: (1) declaring, *inter alia*, that: (a) "WMATA's decision to reject Potomac's proposal and award the subject surface parking pavement rehabilitation contracts to another entity was in violation of law;" and (b) "but for WMATA's failure to execute a 'fair and equal consideration' of Potomac's proposal in accordance with WMATA's own Procurement Procedures Manual and applicable law, Potomac would have been awarded [the] surface parking pavement rehabilitation contract;" and (2) requiring WMATA to (a)

"rescind the award of the subject contract to [another vendor-bidder] due to the manifest violations of WMATA procedures"; and (b) directing WMATA to "review anew . . . [Potomac's] proposal . . . affor[d] Potomac . . . a fair and equal opportunity to be consideration (sic) for [the] award, *or in the alternative*. . . award the paving contract to Potomac as the lowest priced acceptable, responsive, and responsible offeror."  (Verified Complaint, pp. 23-24).

On January 26, 2021, Plaintiff filed a "Motion for Preliminary Injunction and Request for a Hearing" ("Preliminary Injunction Motion") (ECF Nos. 4-5).  Following a case management conference with the predecessor judge assigned to this case, the parties identified the date of February 25, 2021 as the date by which Defendant had to file its Answer or other responsive pleading to the Preliminary Injunction Motion.  (ECF No. 9).  In the interim, on February 17, 2021, Potomac filed a notice of intent to file a motion for expedited discovery, whereby Plaintiff sought a limited amount of materials from Defendant related to its Preliminary Injunction Motion.  (ECF No. 16).  On February 19, 2021, Defendant filed the Motion to Dismiss, (ECF No. 17, "Motion to Dismiss"), which Plaintiff opposed on March 5, 2021.  (ECF No. 22, "Opposition Motion").  Defendant filed its Reply on March 12, 2021 (ECF No. 23, "Reply").  On March 12, 2021, Defendant also filed its response to the discovery-related letter filed by Plaintiff.  (ECF No. 24).

## III.   STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion may allege that sovereign immunity serves as a jurisdictional bar against the claim.  *Smith v. Wash. Metro. Area. Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002).  When a defendant challenges

subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(1) challenge to subject matter jurisdiction may proceed "in one of two ways": (1) by mounting either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or (2) a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (alteration in original) (citation omitted). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, however, a "district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. Under this scenario, a "district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

### B. Motion to Dismiss for Failure to State a Claim

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it is asserting that, even if a court construes the facts advanced in the Plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, then, a complaint must contain sufficient facts, and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.   The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, Civ. No. RDB 12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).   A complaint must only satisfy the standard of Fed. R. Civ. P. 8(a), namely, it must have a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555.

## IV.   DISCUSSION

As a preliminary matter, this Court must have subject-matter jurisdiction in order to entertain a matter before it.   *Lightfoot v. Cendant Mort. Corp.*, 137 S. Ct. 553, 562 (2017).   If a court lacks subject matter jurisdiction, then it must dismiss the case.   Fed. R. Civ. P. 12(b)(1). Accordingly, the Court will first consider Defendant's arguments that sovereign immunity shields it from Plaintiff's claims.

Defendant advances several arguments in support of dismissing the Verified Complaint. First, that this Court lacks subject matter jurisdiction because WMATA is protected by sovereign immunity, which is outlined in the interstate compact that created WMATA ("the WMATA Compact" or "the Compact").   Relatedly, Plaintiff does not advance any claims that are within the scope of WMATA's limited waiver of sovereign immunity outlined in the Compact.   Second, that WMATA's PPM does not independently confer subject matter jurisdiction on this Court.   Third, that the Administrative Procedure Act's ("APA") waiver of sovereign immunity is inapplicable to WMATA because WMATA is not a federal government agency but, rather, a state agency.   Fourth, that the two counts in the Verified Complaint fail to confer subject matter jurisdiction upon this Court, as they are not independent causes of federal action and therefore this case should be

dismissed under Fed. R. Civ. P. 12(b)(6).  (Motion to Dismiss, pp. 10-17).  Relatedly, Defendant contends Potomac fails to state claims upon which relief can be granted because the Verified Complaint and documents related thereto demonstrate that WMATA acted in accordance with its regulations when addressing Potomac's bid submission.  In essence, Defendant's averment that Plaintiff has no plausible entitlement to relief necessarily means that WMATA believes Plaintiff's preliminary injunction is unlikely to succeed.  (Motion to Dismiss, pp. 17-22).

Plaintiff counters with four arguments.  First, that this Court has original and subject matter jurisdiction over this suit because the WMATA Compact, PPM, the IFB, and the Contracting Officer's denial letter expressly waive WMATA's sovereign immunity in bid protest actions. Second, that APA review applies to actions challenging WMATA's procurement decisions because WMATA is "both a multi-state agency and a federal agency," and because the WMATA Compact and PPM intend for WMATA to perform procurements as federal agencies do. Third, that Potomac's cause of action for declaratory and injunctive relief is sufficient to state a cognizable claim upon which relief can be granted because WMATA arbitrarily and capriciously rejected Plaintiff's bid submission.  Last, Plaintiff contends that the Court, based on the facts alleged in its opposition, should "deny WMATA's motion to dismiss and grant WMATA's motion for preliminary injunction."   Accordingly, Potomac urges this Court to grant its preliminary injunction motion. (Opposition, pp. 5-19).

The Court will first analyze the subject matter jurisdiction issues.

### A.  Sovereign Immunity and the Washington Metropolitan Area Transit Authority

Maryland, Virginia, and the District of Columbia created WMATA via an interstate compact, so that WMATA would provide transportation in the Washington D.C. metro area. *Delon Hampton & Assocs., Chartered v. Wash. Metro. Area Transit Auth.*, 943 F.2d 355, 357-59

(4th Cir. 1991).  The Compact between these three governments established WMATA as an interstate agency and instrumentality of each signatory.  *Id.* at 359.

Three sections of the Compact are relevant here:  Sections 80, 81, and 73.

Section 80 of the Compact states, in pertinent part:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the applicable signatory (including rules of conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code Ann., Transp. § 10–204(80) (2010).

Section 81 of the Compact states, in pertinent part:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia, and the District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this title.  Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. § 1446).

Md. Code Ann., Transp. § 10–204(81) (2010).

Section 73 of the Compact states, in pertinent part that:

> the Authority in conducting a procurement of property, services, or construction shall . . . [o]btain full and open competition through the use of competitive procedures in accordance with the requirements of this section; and . . . [u]se the competitive procedure or combination of competitive procedures that is best suited under the circumstances of the procurement.

Md. Code Ann., Transp. § 10–204(73) (2010).

### B. No Express Waiver of Sovereign Immunity for Private Causes of Action to Enforce the Compact's Procurement Provisions

Plaintiff contends that when taken together, Sections 73 and 81 of the Compact, Section 17 of WMATA's PPM, the IFB, and the Contracting Officer's denial letter, constitute an express

waiver of WMATA's sovereign immunity in suits alleging a violation of the Authority's procurement policies and procedures.  (Opposition, pp. 10-12).  The Court does not find this argument to be persuasive.[3]

Section 80 of the Compact "specifically and expressly delineates the scope of WMATA's consent to be sued."  *Lizzi v. Alexander*, 255 F.3d 128, 133 (4th Cir. 2001) (citation omitted), *overruled in part on other grounds by Nevada Dep't of Human Res. v. Hibbs,* 538 U.S. 721 (2003).  Because any waiver of sovereign immunity "must be clear and unequivocal," the Fourth Circuit has read Section 80 as only waiving WMATA's sovereign immunity for "breaches of contract and for torts committed in the conduct of a proprietary function."  *Id.*  In *Lizzi*, the Fourth Circuit rejected the appellant's attempt to rely on a combination of Sections 12[4] and 81 of the Compact to establish a waiver of sovereign immunity not provided for in Section 80—specifically, the appellant's argument that WMATA was subject to suit under the Family Medical Leave Act.  *Id.* at 132-33.  The court explained that Section 80 "provides only for a limited waiver of sovereign immunity," and that it would be "particularly inappropriate" to rely on Sections 12 and 81 as effecting an even broader waiver of sovereign immunity where Section 80 "delineates the entire scope of WMATA's waiver of its sovereign immunity."  *Id.* at 133.

---

[3] Plaintiff further argues that WMATA's "violation of its regulations in the . . . Compact, which Congress approved, and which became federal law, create federal questions under 28 U.S.C. § 1331."  (Opposition, pp. 11-12).  Plaintiff is correct that Congress "consented to the Compact" and "any legal issues relating to its interpretation are federal questions."  *Smith*, 290 F.3d at 206.  But, as explained below, because Section 80 of the Compact does not waive WMATA's sovereign immunity in actions challenging the Authority's procurement decisions, this argument is unavailing.

[4] Section 12 of the Compact provides in pertinent part:  "In addition to the powers and duties elsewhere described in this title, and except as limited in this title, the Authority may . . . [s]ue and be sued."  Md. Code Ann., Transp. § 10–204(12)(a) (2010).

The D.C. Circuit has similarly interpreted the Compact, holding that Section 81 of the Compact must be read in conjunction with Section 80. *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 221 (D.C. Cir. 1986) ("Sections 80 and 81 should read as parts of a coherent whole."). *Morris* also rejected an attempt to find a waiver of WMATA's sovereign immunity in Section 12 of the Compact. *Id.* at 221 n.3 ("reliance on [Section 12's] 'sue and be sued' clause would be particularly inappropriate in this case where another section of the Compact, § 80, specifically and expressly delineates the scope of WMATA's consent to be sued").

More to the point, the United States District Court for the District of Columbia recently held that Section 81 of the Compact does not waive WMATA's sovereign immunity for actions involving bid protest decisions. *Schindler Elevator Corp. v. Wash. Metro. Area Transit Auth.*, Civ. No. RC 20-3157, 2020 WL 7668905, at *6 (D.D.C. Dec. 23, 2020). *Schindler* held that Section 81 does not establish a cause of action because a statute's jurisdictional provision—like Section 81—"'creates no cause of action of its own force and effect.'" *Id.* at *6 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979)). The *Schindler* court explained that this was "because a cause of action must be grounded 'in the substantive provisions'" of the statute a plaintiff seeks to enforce. *Id.* (quoting *Touche*, 442 U.S at 577).

Here too, Plaintiff's argument that Sections 73 and 81 of the Compact establish a waiver of the Authority's sovereign immunity must fail. "It is a commonplace (sic) of statutory construction that the specific governs the general," *Lizzi*, 255 F.3d at 133-34, and here, where Section 80 of the Compact provides only for an explicit waiver of WMATA's sovereign immunity for breaches of contract and torts committed in the conduct of any proprietary function, Plaintiff cannot rely on a combined reading of Sections 73 and 81 to create a waiver that Section 80 does not provide. This conclusion also finds support in the specific text of Sections 73 and 81. Section

73 of the Compact establishes WMATA's obligations "in conducting a procurement of property, services, or construction," but is silent as to any waiver of sovereign immunity and therefore cannot serve as a basis for establishing a private cause of action in suits challenging WMATA's procurement decisions.  Md. Code Ann., Transp. § 10–204(73); *see also Schindler*, 2020 WL 7668905, at *8 (holding, in part, that Section 73 of the WMATA Compact "provides no such waiver of sovereign immunity").  Section 81 establishes that the United States District Courts for Maryland, Virginia, and the District of Columbia shall have jurisdiction over actions brought against WMATA.  Md. Code Ann., Transp. § 10–204(81).  But, because the source of a plaintiff's rights must be found in the "substantive provisions of the . . . Act which they seek to enforce, [and] not the jurisdictional provision," *Touche,* 442 U.S. at 577, Section 81 of the Compact cannot form the basis for a cause of action in this matter either.  Therefore, the WMATA Compact does not contain an express waiver of sovereign immunity for actions involving the Authority's procurement decisions.

Equally unavailing is Plaintiff's contention that PPM Chapter 17, the IFB, and the Contracting Officer's denial letter support a finding that WMATA's sovereign immunity is waived for actions challenging the Authority's procurement decisions.

Section 17 of the PPM establishes procedures for the administrative resolution of bid protests.  (ECF No. 1-3, p. 20).  Section 17-10 provides, in relevant part, that "[t]he United States District Courts for the Districts of Maryland, Virginia, and the District of Columbia . . . have jurisdiction over court actions concerning protest decisions."  (ECF No. 1-3, p. 24).

The IFB provides that "[t]he judicial authorities having jurisdiction over court actions concerning protest decisions are the United States District Courts for the Districts of . . . Virginia,

Maryland, and the District of Columbia, and the local courts in [the] State of Maryland, Commonwealth of Virginia, and the District of Columbia."[5]  (Opposition, p. 11).

The Contracting Officer's denial letter explained that because this is a federally assisted procurement, the "protester has the right to file an appeal against the [Contracting Officer's] final decision in conformism with PPM Chapter 17, Article 8."[6]  (ECF No. 1-9, p. 6).  In response to a letter from Plaintiff seeking reconsideration of WMATA's resolution of its bid protest, WMATA notified Plaintiff that its next step was to appeal to the "FTA or the United States District Courts for the Districts of Maryland, Virginia and the District of Columbia . . . [which] have jurisdiction over court actions concerning protest decisions."  (ECF No. 1-11, p. 11).

Despite these explicit statements by WMATA that the United States District Court for the District of Maryland has "jurisdiction over court actions concerning protest decisions," such pronouncements cannot establish a waiver of WMATA's sovereign immunity.  "The Supreme Court has long held that any waiver of sovereign immunity must be 'unequivocally expressed in statutory text.'"  *Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).  Thus, where Plaintiff has not identified an express waiver of WMATA's sovereign immunity in the statutory text authorizing judicial review of bid protest decisions, Plaintiff's reliance on documents with even less force cannot establish a waiver of WMATA's sovereign immunity for such actions.  The United States District Court for the District of Columbia has similarly concluded that PPM Chapter 17 "cannot operate as a source of jurisdiction."  *Schindler*, 2020 WL 7668905, at *6.  *Schindler* held that the PPM could not confer

---

[5] Plaintiff did not submit this specific portion of the IFB as an exhibit, but instead quoted the relevant language from the IFB in its pleading.  (Opposition, p. 11).  However, the Court accepts the above quoted language from the IFB as true.
[6] PPM Chapter 17, Article 8 establishes the procedures for when an aggrieved bidder can file a bid protest with the Federal Transit Authority.  (ECF No. 1-3, p. 23).

jurisdiction on the court where Congress has not done so, because "only Congress can create jurisdiction regardless of the consent of any parties to an action." *Id.* (citing *Patchak v. Zinke*, 138 S. Ct. 897, 907 (2018)).

Therefore, the PPM, IFB, and denial letter do not serve to expressly waive WMATA's sovereign immunity for actions involving procurement decisions.

### C. No Implied Cause of Action in the WMATA Compact for Bidders Challenging WMATA's Procurement Decisions

Next, Plaintiff urges this Court to follow the holding of *Challenger Transportation, Inc. v. Washington Metropolitan Area Transit Authority* (*Challenger I*), Civ. No. TDC 14-3322, 2015 WL 4608060, at *4 (D. Md. July 30, 2015), to find that WMATA's sovereign immunity does not bar challenges to the Authority's procurement decisions.  (Opposition, p. 10).  WMATA counters that the court's decision in *Challenger I* is based on a discredited theory of statutory interpretation that has been "squarely rejected by the Fourth Circuit."  (Reply, p. 10).

The *Challenger I* court held that WMATA's sovereign immunity does not bar suits alleging that the Authority arbitrarily and capriciously violated its procurement policies and procedures.  *Challenger I* identified two bases on which the Plaintiff's suit could proceed.  The first basis is that because WMATA is "treated as a federal agency" in challenges to the Authority's procurement decisions, contract award protest claims "are statutory causes of action that arise out of the Administrative Procedure Act . . . and federal procurement law."  2015 WL 4608060, at *4 (citing *Seal & Co. v. Wash. Metro. Area Transit Auth.*, 768 F. Supp. 1150, 1157 (E.D. Va. 1991) ("Congress intended WMATA to conduct its procurements as a federal agency would and to be subject to suits by aggrieved bidders for procurement activities in violation of the Compact or WMATA's regulations."); *Monument Realty, LLC v. Wash. Metro. Area Transit Auth.*, 535 F. Supp. 2d 60, 73-74 (D.D.C. 2008) (finding WMATA is "a federal agency for purposes of standing

when a party seeks to challenge WMATA's procurement decisions" and its "procurement decisions must be in accordance with the APA"); *Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1479-80 (D.C. Cir. 1992) (assuming without deciding that WMATA is a federal agency and therefore subject to federal procurement law)).  The second basis followed a line of cases recognizing an implied cause of action for disappointed bidders in the scheme of the Compact.  2015 WL 4608060, at *5 (citing *Seal & Co.*, 768 F. Supp. at 1157) ("[T]he existence of a cause of action for disappointed bidders is arguably implicit . . . in the scheme of the Compact")).  In reaching this holding, *Challenger I* relied heavily on three cases:  *Seal & Co. v. WMATA*; *Monument Realty, LLC v. WMATA*; and *Elcon Enters., Inc. v. WMATA*.  This Court will begin by examining whether there is an implied cause of action in the Compact for disappointed bidders seeking to challenge WMATA's procurement decisions.  The Court will then turn in Sections D and E to the question of whether WMATA is a federal agency subject to the APA ("the federal agency question") and the applicability of the quasi-federal agency doctrine to WMATA.

In *Seal*, an unsuccessful bidder for a WMATA contract to construct a communications system sought judicial review of the denial of its bid protest.  758 F. Supp. at 1152.  WMATA moved to dismiss the suit, asserting that disappointed bidders lack standing to challenge its procurement decisions.  *Id.* at 1153.  The *Seal* court disagreed, holding that private parties have standing to challenge WMATA's procurement actions under two theories: (1) where a private cause of action is implicit in the scheme of the WMATA compact; or (2) where WMATA is viewed as a "quasi-federal agency" and "a zone of interests test is applied."  *Id.* at 1156.  *Monument*, held, in part, that for the purposes of standing, when a party challenges WMATA's procurement decisions in federal court "WMATA is treated as a federal agency."  535 F. Supp. 2d at 73.  The *Monument* court's decision relied heavily on the D.C. Circuit's decision in *Elcon*.  *Monument*, 535

F. Supp. 2d at 73-74 (citing *Elcon*, 977 F.2d at 1479-80). *Elcon*, however, never actually reached this issue, as the court assumed *arguendo* that WMATA was a federal agency and that its "procurement decisions must be reached in accordance with the APA." 977 F.2d at 1480.[7]

This Court declines to follow *Challenger I's* holding that implicit in the scheme of the WMATA Compact is a cause of action permitting suits challenging WMATA's procurement decisions. The Court finds that in the intervening years between the decision in *Seal* and the filing of this action, the Supreme Court has narrowed the circumstances in which federal courts can create implied causes of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). *Alexander* held that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress," and charged courts with interpreting Congressional legislation to "determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286. If a court finds legislation to be "silent or ambiguous" as to Congress's intent, then a court cannot find a cause of action. *Planned Parenthood South Atl. v. Baker*, 941 F.3d 687, 694 (4th Cir. 2019).

Finding an implied cause of action here would, by its very nature, require this Court to conclude that the Compact waives WMATA's sovereign immunity for actions in which disappointed bidders challenge the Authority's procurement decisions. However, such a finding is squarely foreclosed by recent decisions of both the Supreme Court and the Fourth Circuit. The Supreme Court has held that any waiver of sovereign immunity "must be 'unequivocally expressed in statutory text.'" *Cunningham v. Lester*, 990 F.3d at 365 (quoting *Cooper*, 566 U.S. at 290). Therefore, it follows that a waiver of the Federal Government's sovereign immunity may not be

---

[7] In Sections D and E the Court more fully discusses the federal agency and quasi-federal agency issues.

implied from statutory text.[8]  *See Robinson v. United States Dep't of Ed.*, 917 F.3d 799, 801 (4th Cir. 2019) (citation omitted) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied.").  Nor can legislative history "supply a waiver that is not clearly evident from the language of the statute." *Cooper*, 566 U.S. at 290.  Put simply, sovereign immunity "can only be waived by statutory text that is unambiguous and unequivocal." *Robinson*, 917 F.3d at 802.  Guided by these principles, this Court declines to follow *Challenger* and *Seal* in recognizing an implied cause of action for disappointed bidders in the scheme of the WMATA compact.[9]

### D.  Impact of Administrative Procedure Act on Sovereign Immunity: Federal Agency Question

In the alternative, Plaintiff urges this Court to follow *Challenger I's* holding that WMATA is treated as a federal agency, subject to the strictures of the APA, in actions alleging that the Authority violated its own procurement policies and procedures.  (Opposition, p. 15).  WMATA

---

[8] WMATA is unique among interstate compacts in that "Congress adopted and enacted the WMATA Compact for the District of Columbia" while also consenting to Maryland and Virginia entering into the Compact. *Morris*, 781 F.2d at 222.  In doing so, there is "no question that the United States could validly confer its sovereign immunity upon WMATA" and that Maryland and Virginia validly conferred their Eleventh Amendment immunity on WMATA as well. *Id.*; *see also Smith*, 290 F.3d at 206 ("[t]he Compact . . . evinces the clear intent of its signatories to effect . . . a conferral" of their sovereign immunity on WMATA).  Regardless of whether this Court follows the framework for assessing a waiver of the Federal Government's sovereign immunity, or a waiver of the Eleventh Amendment immunity conferred on WMATA by Maryland and Virginia, one constant remains:  a waiver of sovereign immunity must be express and unequivocal. *Cooper*, 566 U.S. at 290 ("waiver of sovereign immunity must be unequivocally expressed in statutory text"); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded by statute,* P.L. 99-506, *as recognized in Lane v. Pena*, 518 U.S. 187 (1996) ("a State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text").

[9] This Court is sympathetic to Plaintiff's argument that an implied cause of action would allow courts to "fulfill WMATA's own procurement rules appointing the judiciary to serve as the external check against procurement misconduct," and that without an implied cause of action parts of the Compact "cannot be enforced by an aggrieved bidder."  (Opposition, p. 15-16).  But where a statute does not create a private cause of action, a court may not find one, "'no matter how desirable that might be as a policy matter.'" *Planned Parenthood*, 941 F.3d at 695 (quoting *Alexander*, 532 U.S. at 286-87).

counters that it is not a federal agency but rather a state agency created by interstate compact, and therefore cannot be subject to the APA.  (Motion to Dismiss, pp. 19-20; Reply, p. 12).

The APA provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."  5 U.S.C. § 702.  The APA defines an "agency" as "each authority of the Government of the United States," and excludes, in relevant part, "the Congress" and "the government of the District of Columbia."  5 U.S.C. § 701(b)(1)(A), (D); § 551(1)(A), (D).  Therefore, § 702 waives sovereign immunity only when the Defendant is an agency as defined by § 701(b)(1).  *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) (the APA "waives immunity only when the defendant" is an "agency" within the meaning of the APA).  Pursuant to § 702, the Fourth Circuit has held that "a disappointed bidder for a federal agency contract is a person adversely affected or aggrieved by agency action" with standing to challenge an agency's contract award in federal court.  *Seal*, 768 F. Supp. at 1154 (citing *Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 962-64 (4th Cir. 1984) (finding unsuccessful competitor for contract at airport operated by Federal Aviation Administration had standing under APA to challenge Administration's alleged failure to follow procurement procedures).

Plaintiff raises two arguments in support of its claim that WMATA is a federal agency, and therefore, that its procurement decisions are subject to APA review.  First, Plaintiff contends that WMATA is both a "multi-state agency" and a "federal agency that is federally approved by Congress" because the United States government entered into the Compact on behalf of the District of Columbia.  (Opposition, p. 13).  Second, Plaintiff asserts that the WMATA Compact and PPM intend for WMATA to "perform federal procurements as federal agencies do," and therefore APA review should apply to the Authority's procurement decisions.  (Opposition, pp. 13-14).  Plaintiff's

second argument is simply a variation of its earlier argument that the WMATA Compact, PPM, IFB, and the denial letter expressly waive WMATA's sovereign immunity.  As further support for this argument, Plaintiff asserts that the PPM mirrors many of same procurement regulations governing federal agencies and even expressly incorporates provisions of the Federal Acquisition regulations.  (Opposition, pp. 13-14).  But even assuming that the Compact and the PPM intend for WMATA to perform federal procurements as federal agencies do, this cannot establish WMATA as an "authority of the Government of the United States" subject to the APA.

Ultimately, Plaintiff urges that this Court need not reach either argument and instead, should follow the decisions of other courts that have applied APA review to bid protests involving WMATA.  None of these arguments are persuasive.

Determining whether an entity is an agency as defined by the APA requires a nuanced analysis.  *See McKinney v. Caldera*, 141 F. Supp. 2d 25, 31 (D.D.C. 2001) (quoting *Lee Constr. Co., Inc. v. Federal Reserve Bank*, 558 F. Supp. 165, 172) (D. Md. 1982) (further citation omitted)) ("The law on the simple question of what is an agency is quite complex.").  Thus, when assessing whether an entity is an agency within the meaning of the APA, courts "examine the structure, function, and mandate of the entity in question."  *New York v. Atlantic States Marine Fisheries Comm'n (ASMFC)*, 609 F.3d 524, 531 (2d Cir. 2010) (citation omitted).

The Fourth Circuit has acknowledged in other contexts that WMATA is "an instrumentality and agency of each of the signatory parties—the District of Columbia, Maryland, and Virginia."  *Wash. Metro. Area Transit Auth. v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir. 1983); *see also Delon Hampton*, 943 F.2d at 359 ("WMATA is an interstate agency and instrumentality of each of the signatories of the Compact").  However, the Court does not believe that the Fourth Circuit has decided whether WMATA is a federal agency subject to the strictures

of the APA.  The Fourth Circuit has, however, examined the federal agency question in a suit involving the Metropolitan Washington Airports Authority ("MWAA").[10]  *Kerpen v. Metro. Wash. Airports Auth.* (*Kerpen II*), 907 F.3d 152 (4th Cir. 2018).  A brief discussion of *Kerpen II* is instructive.

In *Kerpen II*, the Fourth Circuit held that the MWAA is not a federal entity, and therefore, not an "author[ity] of the Government of the United States" subject to the APA.  *Id.* at 160.  *Kerpen II* followed the two-prong test established by the Supreme Court in *Lebron v. National Railroad Passenger Corp.*, 513, U.S. 374 (1995).  Under *Lebron*, a federal entity is an entity that is "both created *and* controlled by the federal government."  *Kerpen II*, 943 F.3d at 158 (emphasis added) (citing *Lebron*, 513 U.S. at 397).  Under the first prong—the creation prong—an entity is established by the federal government when it is "created by a special statute, explicitly for the furtherance of federal government goals."  *Lebron*, 513 U.S. at 397.  Under prong two—the control prong—an entity is controlled by the federal government when its "operations are 'controlled' by federal government appointees," such that the federal government is "the 'policymaker' for the entity."  *Kerpen II*, 943 F.3d at 158 (quoting *Lebron*, 513 U.S. at 396, 398-99).

*Kerpen II* held that the MWAA was not created by the federal government because Congress did not enact "a special law" to create it, but rather by Virginia's and the District of Columbia's enactment of reciprocal laws in 1985.  *Id.* at 159.  The Fourth Circuit found that Congress's  preapproval of the MWAA with the passage of the Transfer Act, "a law giving advance consent to regional compacts for the management of airports," did not transform the MWAA into a creation of the federal government because it "conferred no powers on MWAA; it simply specified the minimum powers MWAA must have in order to lease Dulles and National."

_____

[10] Virginia and the District of Columbia created the MWAA by interstate compact for the management of Dulles and National airports.  *Kerpen II*, 907 F.3d at 157.

*Id.*  As for *Lebron's* control prong, the Fourth Circuit decided that MWAA was not controlled by the federal government because only three of MWAA's seventeen board members are appointed by the federal government, a "distinct minority of the Board" unable exercise control over the MWAA.  *Id.*  The *Kerpen II* court reasoned that if the MWAA was not a federal entity, then it could not be an "author[ity] of the Government of the United States" pursuant to the APA.  *Id.* at 160.

Here, the question of whether WMATA was created by the federal government as contemplated by *Lebron* is not an entirely straight forward one.  As several courts have noted, WMATA is unique in that Congress entered the Compact on behalf of the District of Columbia, and "was the motivating force behind the creation of the Compact."  *Seal*, 768 F. Supp. at 1157 ("Congress on behalf of the District of Columbia was one of the parties agreeing to the Compact."); *see also Schindler*, 2020 WL 7668905, at *4 ("WMATA is unique . . . in that the District of Columbia, a federal territory over which Congress holds ultimate authority, is a party to the WMATA Compact."); *Martha's Vineyard/Duke's Cnty. Fisherman's Ass'n v. Locke*, 811 F. Supp. 2d 308, 315 n.2 (D.D.C. 2011) (citing *The Bootery, Inc. v. Wash. Metro. Area Transit Auth.*, 326 F. Supp. 794, 798-99 (D.D.C. 1971) (finding Congress "authorized and directed the Board of Commissioners of the District of Columbia to enter into and execute the Authority Compact on behalf of the United States for the District of Columbia")).  However, this Court need not decide whether WMATA satisfies the creation prong of *Lebron* because WMATA's operations are not controlled by federal government appointees.  Only two of the Authority's eight Directors are appointed by the federal government with the other six divided equally between, Maryland, Virginia, and the District of Columbia, a minority that cannot exercise control over WMATA.  *See* Md. Code Ann., Transp. § 10–204(5)(a) (2010).  Therefore, because WMATA does not satisfy

22

both prongs of *Lebron*, it is not a federal entity.  It follows, *a fortiori*, that WMATA is not an "authority of the Government of the United States" within the meaning of § 701(b)(1) of the APA.

*Old Town Trolley Tours of Washington, Inc. v. Washington Metropolitan Area Transit Commission*, 129 F.3d 201 (D.C. Cir. 1997), a case involving WMATA's sister organization, the Washington Metropolitan Area Transit Commission ("WMATC"), further supports the conclusion that WMATA is not a federal agency.  In *Old Town Trolley*, the D.C. Circuit held that the WMATC is not "a federal agency governed by the Administrative Procedure Act." *Id.* at 204.  The WMATC was established in 1960 when Maryland, Virginia, and the District of Columbia entered into the Washington Metropolitan Area Transit Regulation Compact ("the WMATC Compact") with Congress's consent.  *Id.* at 203.  While acknowledging that the WMATC Compact is federal law, the D.C. Circuit held that the WMATC is not a federal agency governed by the APA because "it is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia."  *Id.* at 204.  Here, too, the mere fact that the WMATA Compact is federal law does not transmogrify WMATA into a federal agency, where it also is "an instrumentality and agency of each of the signatory parties—the District of Columbia, Maryland, and Virginia."  *One Parcel of Land*, 706 F.2d at 1314; *see also Saunders v. Wash. Metro. Transit Auth.*, 359 F. Supp. 457, 460 (D.D.C. 1973) (finding that the WMATA Compact was "authorized and approved by Congress on behalf of the District of Columbia" but that the plaintiff "offered nothing" indicating "that [WMATA] thereby became a Federal agency").  Therefore, this Court does not find persuasive Plaintiff's argument that WMATA is a federal agency.[11]

---

[11] Moreover, the "general consensus" among the federal courts that have examined whether interstate entities are federal agencies within the meaning of the APA is that they are not.  *Schindler*, 2020 WL 7668905 at *4 (collecting cases).

### E.  Impact of Administrative Procedure Act on Sovereign Immunity: Quasi Federal Agency Question

Perhaps anticipating such a finding, Plaintiff contends that this Court need not decide whether WMATA is a federal agency, instead urging the Court to follow the holding of *Challenger Transportation, Inc. v. Washington Metropolitan Area Transit Authority* (*Challenger II*), Civ. No. TDC 14-3322, 2017 WL 7691746, at *6 (D. Md. Nov. 28, 2017), that the Compact provides this Court with "original and subject matter jurisdiction over bid protests against WMATA." (Opposition, p. 14).  WMATA counters that the foundation for *Challenger II*, like *Challenger I*, has been eroded by subsequent caselaw and, therefore, is not persuasive.  (Reply, p. 15).

*Challenger II's* holding recognizing "a cause of action for a disappointed offeror to challenge a WMATA contract award . . . under a standard comparable to that applied under the Administrative Procedure Act," is grounded in the same three cases as *Challenger I*: *Elcon*, *Monument*, and *Seal*.  2017 WL 7691746, at *6 (citing *Elcon*, 977 F.2d at 1478-80; *Monument*, 535 F. Supp. 2d at 73-74; and *Seal*, 768 F. Supp. at 1157).  In Section C, the Court briefly mentioned *Elcon*, *Monument*, and *Seal*.  A further analysis of these cases follows.

Turning first to the D.C. Circuit's decision in *Elcon*, there, the Court assumed, without deciding, that WMATA was a federal agency and accordingly that its procurement decisions were governed by the APA.  977 F.2d at 1480.  Thus, *Elcon* does not decide the issue.  *Monument*, relying entirely on *Elcon*, held that "WMATA is treated as a federal agency for purposes of standing when a party seeks to challenge WMATA's procurement decisions in federal court," and therefore, that "WMATA's procurement decisions must be made in accordance with the APA." 540 F. Supp. 2d at 73-74.  As such, neither *Elcon* nor *Monument* conclusively establishes that WMATA is a federal agency as defined by the APA.  *See Schindler*, 2020 WL 7668905, at *4 ("*Elcon* and its progeny provide little in the way of persuasive support for [the] position that

24

WMATA is a federal agency for the purposes of the APA".).  Therefore, an analysis of *Seal* remains.

First, the *Seal* court explicitly held that WMATA was not a federal agency, finding instead that it is "an instrumentality and agency of each of the signatory parties [the District of Columbia, Maryland and Virginia.]"  *Seal*, 768 F. Supp. at 1154 (citation omitted).  Next, the *Seal* court held that "private parties have standing to challenge WMATA's procurement actions," in part, because WMATA is a "quasi-federal agency" that Congress intended "be subject to APA-like review of its procurement activities."[12]  768 F. Supp. at 1156-157.  Under the quasi-federal agency doctrine, an entity that is not subject to the APA but nonetheless performs tasks as a federal agency would, is subject to APA-like review.  *See Schindler*, 2020 WL 7668905, at *5 (citing Jacob E. Gersen, *Administrative Law's Shadow*, 88 Geo. Wash. L. Rev. 1071, 1087 (2020) (explaining that under the quasi-federal agency doctrine "when an entity is not classified as a federal agency for purposes of the APA, but performs tasks and functions in the same way that a federal agency did or could, then it should be treated as though it is a federal agency")).  The Fourth Circuit has yet to rule on the validity of the quasi-federal agency doctrine, and thus far no federal court of appeals has adopted the doctrine in a published opinion.[13]  The Second Circuit, despite applying the quasi-federal agency doctrine to conclude that the Atlantic States Marine Fisheries Commission was not a quasi-federal agency, has questioned the validity of the doctrine.  *ASMFC*, 609 F.3d at 534.  More recent decisions by the United States District Court for the District of Columbia have rejected the

---

[12] *Seal* also held that this same result was compelled viewing WMATA as a non-federal agency and employing an implied cause of action analysis.  768 F. Supp. at 1156.  However, as discussed above in Section C, this Court declines to follow *Seal's* implied cause of action analysis.

[13] The Eighth Circuit is the only federal appeals court to have adopted the quasi-federal agency doctrine. *Heard Commc'ns, Inc. v. Bi-State Dev. Agency*, 18 Fed. App'x 438 (8th Cir. 2001).  However, it did so in an unpublished opinion and applied the doctrine to conclude that an interstate compact—the Bi-State Development Agency—was not a quasi-federal agency.  *Id.* at 440-41.

quasi-federal agency doctrine as "'incompatible with the modern doctrine that causes of action are created by Congress, *not* federal courts.'"[14] *Schindler¸* 2020 WL 7668905, at *5 (quoting *Martha's Vineyard*, 811 F. Supp. 2d at 314).   Beyond *Seal*, only one other district court decision in this Circuit has directly examined the quasi-federal agency doctrine.   *See Kerpen v. Metro. Wash. Airports. Auth.* (*Kerpen I*), 260 F. Supp. 3d 567 (E.D. Va. 2017) (rejecting the quasi-federal agency doctrine).   *Kerpen I* declined to embrace the quasi-federal agency doctrine, noting that the "Fourth Circuit has implicitly rejected it."[15]   *Id.* at 586-87.

However, this Court need not decide the validity of the quasi-federal agency doctrine because, even assuming *arguendo* the legitimacy of the doctrine, its application here cannot result in a waiver of WMATA's sovereign immunity.   Such a holding would squarely conflict with the rule that a waiver of sovereign immunity must be unequivocally expressed in statutory text.   *See Robinson*, 917 F.3d at 802 (sovereign immunity "can only be waived by statutory text that is unambiguous and unequivocal."   Thus, Plaintiff has not identified a valid waiver of WMATA's sovereign immunity, and absent a statutory waiver of WMATA' sovereign immunity, this Court lacks subject matter jurisdiction to hear this matter and must dismiss this case.

## V.   CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction to entertain this Complaint.   Accordingly, the Motion to Dismiss filed by Defendant predicated on Fed. R. Civ. P.

---

[14] Plaintiff argues that its unanswered FTA appeal distinguishes this case from *Schindler*, where the aggrieved bidder did not seek an appeal to the FTA.   (Opposition, p. 16).   The Court does not find this argument persuasive but rather a repackaged version of Plaintiff's argument that this Court has rejected— that without an implied cause of action parts of the Compact "cannot be enforced by an aggrieved bidder." (*See supra* p. 18, n.9)

[15] *Kerpen I* cites to *United States v. Saunders*, 828 F.3d 198, 205 (4th Cir. 2016), for the proposition that the Fourth Circuit implicitly rejected the quasi-federal agency doctrine by "citing with approval the Second Circuit's rejection" of the doctrine in *New York v. ASFMC*.   *Kerpen I*, 260 F. Supp. 3d at 586-87.   However, the Fourth Circuit did not explicitly examine the validity of the quasi-federal agency doctrine in *Saunders*. 828 F.3d at 205.

12(b)(1) will be granted.  The Court declines to address the Fed. R. Civ. P. 12(b)(6) dismissal arguments raised by Defendant.  The Verified Complaint will be dismissed.

The Court further orders that Plaintiff's Preliminary Injunction Motion will be denied as moot.  Plaintiff's notice of intent to file a motion for expedited discovery will be denied as moot. A separate order will follow.


Dated:  April 16, 2021                          _____/s/_____
                                                The Honorable Gina L. Simms
                                                United States Magistrate Judge

27